**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-CV-899 |
| | ) | |
| TONY W. SHORT, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's Motion for Summary Judgment (the "Motion") (Docket Entry 35).[1]  For the reasons that follow, the Court will grant Plaintiff's Motion.[2]

### BACKGROUND

Plaintiff instituted this action to reduce to judgment Defendant's outstanding tax liabilities and enforce and foreclose the corresponding federal tax liens on Defendant's real property. (Docket Entries 1, 8.)  At the close of discovery, Plaintiff filed the instant Motion (Docket Entry 35), along with 16 supporting exhibits (Docket Entries 35-1 through 35-13 and 35-17 through 35-19).  Plaintiff's exhibits include:

---

[1] Citations herein to Docket Entry pages utilize the document's internal pagination if internal pagination exists.  In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

[2] The parties consented to disposition of this case by a United States Magistrate Judge under 28 U.S.C. § 636(c).  (Docket Entry 27 at 2.)

(1) the sworn declaration of Doreen Wronecki (Docket Entry 35-1), an Internal Revenue Service ("IRS") officer who "assist[ed] with the investigation and collection of [Defendant's] unpaid federal tax liabilities . . . for tax years 1998, 1999, 2000, and 2002" (id., ¶ 1);

(2) copies of Defendant's Income Tax Examination Changes for tax years 1997 through 2001 that Defendant signed (the "Tax Assessments") (Docket Entry 35-2);

(3) copies of Defendant's 1998 and 1999 unsigned U.S. Individual Income Tax Returns (Docket Entry 35-3);

(4) a copy of Defendant's 2002 signed U.S. Individual Income Tax Return (Docket Entry 35-7);

(5) copies of the IRS Account Transcripts detailing Defendant's tax information, including penalties and interest, for tax periods ending December 31, 1998, December 31, 1999, December 31, 2000, and December 31, 2002 (the "Account Transcripts") (Docket Entries 35-4, 35-5, 35-6, 35-8);

(6) a copy of Defendant's Application for Change in Accounting Method for his business for tax year 2008 (Docket Entry 35-11);

(7) a copy of the North Carolina General Warranty Deed to Defendant's real property (Docket Entry 35-12);

(8) a copy of the Federal Tax Lien Document encumbering Defendant's real and personal property (Docket Entry 35-13);

(9) a copy of Defendant's deposition (Docket Entry 35-17);

(10) excerpts from the deposition of Keith Thomas ("Thomas") (Docket Entry 35-18), Defendant's bookkeeper from 2001 through 2003 (id. at 7-8; Docket Entry 40-1 at 104); and

(11) excerpts from the deposition of Atwood E. Long, III ("Long") (Docket Entry 35-19), the Certified Public Accountant who has prepared Defendant's tax returns since 2003 (id. at 9; see also Docket Entry 40-1 at 104 (Defendant stating, "I hired [Long] in 2003.")).

Defendant responded to Plaintiff's Motion (Docket Entry 40), submitting a copy of his deposition (Docket Entry 40-1) and his 1998 Account Transcript (Docket Entry 40-2).[3]

Based on the proffered evidence, it is undisputed that Defendant owned and operated a concrete construction business incorporated in 1996. (Docket Entry 40-1 at 7-8.) It is also undisputed that Defendant did not file federal income tax returns for tax years 1998, 1999, and 2000. (Id. at 53 (Defendant stating, "[i]n '98 and '99 . . . there were no [income tax] returns prepared"), 83 (Defendant acknowledging, as of 2002, "I knew that I hadn't [filed income tax returns for the past few years]"); see also Docket Entry 35-2 (Tax Assessments that Defendant signed verifying his tax liabilities, including penalties and interest, for not filing income tax returns for 1998, 1999, and 2000).) It

---

[3] Plaintiff offered both of these exhibits in support of its Motion. (Docket Entries 35-3 (1998 Account Transcript), 35-17 (Defendant's Deposition).)

is further undisputed that, in 2002, Plaintiff, acting through the IRS, audited Defendant. (Docket Entry 40-1 at 82-83.)[4] At the conclusion of the audit, Defendant signed the Tax Assessments for 1998, 1999, and 2000, detailing his tax liabilities. (Docket Entry 35-2 (signed Tax Assessments); see also Docket Entry 40-1 at 104, 107-08 (Defendant acknowledging his signature on the Tax Assessments); cf. Docket Entry 40, ¶ 12 (Defendant's Response stating, "[a]lthough [he] did not believe the liabilities to be correct, prior to obtaining or consulting counsel, [he] consented to the [T]ax [A]ssessments and penalties in the amounts calculated by the [IRS]").) Based on the signed Tax Assessments, Defendant owed the IRS penalties under 26 U.S.C. § 6651(a)(1) and (f) for his fraudulent failure to file income tax returns, under section 6651(a) for his failure to timely pay his taxes, and under section 6654 for his failure to make required estimated tax payments, as well as interest under section 6601 from the date his tax liabilities became due, at the rate set forth in section 6621(a). (Docket Entry 35-1, ¶¶ 4-7; see also Docket Entries 35-4, 35-5, 35-6 (Account Transcripts detailing Defendant's tax liabilities for tax periods 1998, 1999, and 2000).)

Defendant filed his 2002 income tax return late. (Docket Entry 35-1, ¶ 7; see also Docket Entry 35-7 (Defendant's signed

---

[4] Defendant signed a power of attorney for Thomas to communicate directly with the IRS on Defendant's behalf during the 2002 audit. (Docket Entry 40-1 at 81-82, 91.)

4

2002 U.S. Individual Income Tax Return dated "9/12/03").)
Defendant's failure to timely file his tax return and pay the full
amount of taxes due that year resulted in further penalties under
section 6651(a). (Docket Entry 35-1, ¶¶ 5-7; see also Docket Entry
35-8 (Account Transcript for tax period ending December 31, 2002,
assessing "Penalty for late payment of tax" and "Penalty for filing
tax return after due date").)

Defendant concedes that, due to his outstanding tax
liabilities, he entered into an installment agreement with the IRS
"to pay $2,000 a month for ten years." (Docket Entry 40-1 at 96;
see also Docket Entries 35-4, 35-5, 35-6, 35-8 (Account Transcripts
for tax years 1998, 1999, 2000, and 2002, stating "Installment
agreement established").) The IRS terminated the installment
agreement because Defendant stopped making the required payments.
(Docket Entry 35-1, ¶ 9; see also Docket Entries 35-4, 35-5, 35-6,
35-8 (Account Transcripts for tax years 1998, 1999, 2000, and 2002,
stating "No longer in installment agreement status"); Docket Entry
40-1 at 96 (Defendant stating, "[u]ntil the recession I [paid the
installments]").)

The IRS now contends that, despite notice and demand for
payment, Defendant has not paid his outstanding tax liabilities.
(Docket Entry 35-1, ¶ 10.) Further, the IRS has recorded a notice
of federal tax lien with the Clerk of Court of Cabarrus County
encumbering Defendant's real and personal property. (Id., ¶ 13;

Docket Entry 35-13.)  Among other things, the notice of federal tax lien encumbers three parcels of Defendant's real property located at 5450 Gold Hill Road, 5550 Gold Hill Road, and 5560 Gold Hill Road, in Gold Hill, North Carolina (the "Gold Hill Road Properties").  (Docket Entries 35-12, 35-16.)  As of September 14, 2015, Defendant's outstanding tax liabilities for unpaid income taxes, interest, and penalties for tax years 1998, 1999, 2000, and 2002, as calculated by Plaintiff, totals $1,222,886.61.  (Docket Entry 35-1, ¶¶ 11-12; see also Docket Entries 35-4, 35-5, 35-6, 35-8 (Account Transcripts for tax years 1998, 1999, 2000, and 2002).)

## DISCUSSION

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Such a "genuine dispute" exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  In making this determination, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in the non-movant's favor."  Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).

6

However, to avoid summary judgment, Defendant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal footnote omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law."). In that regard, "[e]vidence submitted in opposition to a summary judgment motion must be based on personal knowledge." Gell v. Town of Aulander, 252 F.R.D. 297, 300 (E.D.N.C. 2008) (citing Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996)); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Put another way, "[h]earsay testimony may not be relied upon in support or defense of summary judgment." Gell, 252 F.R.D. at 300 (citing Maryland Highways Contractors Ass'n v. Maryland, 933 F.2d 1246, 1251 (4th Cir. 1991)).[5]

---

[5] Hearsay is an out of court statement, offered in evidence, to prove the truth of the matter asserted. Gell, 252 F.R.D. at 300 (citing Fed. R. Evid. 801(c)); see also Fed. R. Evid. 801 (listing exclusions from definition of hearsay); Fed. R. Evid. 803-804 (listing exceptions to Rule against hearsay).

Moreover, and particularly relevant to this case, a tax "assessment amounts to an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes," United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002) (internal quotations marks omitted), which may include applicable interest and penalties, 26 U.S.C. § 6201(a). "[The IRS] may rely on Certificates of Assessments, Payments, and Other Specified Matters to establish a prima facie case of tax liability." United States v. Plummer, 1:14CV420, 2015 WL 4897693, at *2 (M.D.N.C. Aug. 17, 2015) (unpublished) (citing United States v. Pomponio, 635 F.2d 293, 296 (4th Cir. 1980)). "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness-a presumption that can help the Government prove its case against a taxpayer in court." Fior D'Italia, Inc., 536 U.S. at 242.

Here, Plaintiff offers 14 exhibits (Docket Entries 35-1 through 35-11 & 35-17 through 35-19) – including copies of the signed Tax Assessments (Docket Entry 35-2), along with detailed Account Transcripts (Docket Entries 35-4, 35-5, 35-6, 35-8) – to establish Defendant's tax liabilities for tax years 1998, 1999, 2000, and 2002. Under these circumstances, the burden rests with Defendant to disprove those liabilities. United States v. Register, 717 F. Supp. 2d 517, 522-23 (E.D. Va. 2010) (citing Pomponio, 635 F.2d at 296). To meet this burden, Defendant cannot

8

merely rely upon his "tax returns, uncorroborated oral testimony, or self-serving statements." United States v. Lena, 370 F. App'x 65, 70 (11th Cir. 2010) (internal quotation marks omitted).

In his opposition, Defendant argues that: (1) his "failure to make the tax payments at issue in this litigation [was] not fraudulent" (Docket Entry 40, ¶ 7); (2) Thomas told Defendant that the IRS revenue agent that conducted Defendant's 2002 audit insisted on preparation of Defendant's business income tax returns on an "accrual basis," although Defendant was actually entitled to use the "cash method of accounting," which would have reduced his tax liabilities for the years in question (id., ¶¶ 8-11); and (3) although he did not believe his tax liabilities were correct, he continued making payments under the installment agreement through July 20, 2009, when the recession thwarted his ability to make further payments (id., ¶¶ 12-15). These arguments do not present a genuine issue of material fact that would preclude the entry of summary judgment in Plaintiff's favor.

## A. Proof of "Fraudulent" Failure to Pay Taxes

Defendant's brief contends that "[he] was unaware of all required business filings," but, "[o]nce [he] realized his company was earning enough money to require income tax returns, he wanted to pay his taxes[, so he] engaged [] Thomas, a bookkeeper to assist him with his taxes, in order to become fully compliant[; but p]rior to [] Thomas' completion of [his] delinquent returns, in 2002 the

[IRS] began an audit." (Id., ¶¶ 3-6.) As a result, Defendant's brief asserts that his "failure to make the tax payments at issue in this litigation were not fraudulent." (Id., ¶ 7 (emphasis added).)

## i. Penalties for Failure to File Income Tax Returns

Defendant has conflated the penalties assessed for his fraudulent failure to file his income tax returns, with the penalties assessed for his failure to timely pay his income taxes.[6] The IRS assessed penalties under 26 U.S.C. § 6651(f) for Defendant's fraudulent failure to file his tax returns, and under sections 6651(a) and 6654 for Defendant's failure to timely pay the amount of taxes due and to make required estimated tax payments. (Docket Entry 35-1, ¶¶ 4-7.) "'A finding of fraud [for Defendant's failure to file his tax returns under section 6651(f)] requires that [Plaintiff] prove affirmatively by clear and convincing evidence actual and intentional wrongdoing on the part of [Defendant] with a specific intent to evade the tax.'" Worsham v. Commissioner of Internal Revenue, 531 F. App'x 310, 311 (4th Cir. 2013) (quoting Grossman v. Commissioner of Internal Revenue, 182 F.3d 275, 277 (4th Cir. 1999)). However, Defendant's "'intent to defraud may be proven by circumstantial evidence.'" Id. (internal

---

[6] Defendant does not contend that a material factual issue exists as to the fraudulent nature of his failure to file tax returns for the years in question. (See Docket Entry 40.) Nevertheless, this Memorandum Opinion will discuss the state of the record regarding penalties Defendant owes for failure to file.

10

brackets and ellipsis omitted) (quoting <u>Romm v. Commissioner of Internal Revenue</u>, 245 F.2d 730, 734 (4th Cir. 1957)). Such circumstantial evidence may include proof (1) that Defendant filed tax returns in the years preceding the years that he failed to file tax returns, "demonstrating his awareness of the filing requirement," and (2) that Defendant's tax liabilities increased during the years he did not file tax returns. <u>Id.</u> at 311-12.

Even if Defendant lacked awareness of "all required business tax filings," he admitted in his deposition that, "[b]efore [he] incorporated [his] business . . . [he knew] that [he] had to file income tax returns every year" (Docket Entry 40-1 at 39), and that, except for a few years, he did file income tax returns each year prior to 1997 (<u>id.</u>). In addition, Defendant admitted his awareness of most business tax filings for the years in question. (<u>Id.</u> at 40-41 ("Q Did you know after incorporating your business that you had to file a separate income tax return for the business? A There was one -- I forget what one it is -- I didn't know I had to file. I forget what -- I mean, there's like five or six different filings. I couldn't tell you which one it was, I didn't know I had to file. The others I did.").) Defendant's admission that he knew of the requirement to file income tax returns for the years in question and that he filed tax returns in previous years, provides strong evidence of the fraudulent nature of his failure to file. See <u>DeVries v. Commissioner of Internal Revenue</u>, 102 T.C.M. (CCH)

11

125, 2011 WL 3418248, at *6 (2011) ("[W]hen a taxpayer's failure to file for several years is viewed in light of his or her previous filing of income tax returns for prior years, the taxpayer's nonfiling weighs heavily against him or her because the taxpayer is aware of the requirement.").

Moreover, Defendant's deposition testimony directly refutes any suggestion that he did not file because he had not "realized his company was earning enough money to require income tax returns" (Docket Entry 40, ¶ 4). Specifically, in his deposition, Defendant admitted that he did not file tax returns beginning in 1998 because "there were several years that [he] hadn't filed in [his] life, and [he] didn't know what the repercussions were going to be" if he resumed filing tax returns. (Docket Entry 40-1 at 89.) Additionally, Defendant stated that "when [he] got in the . . . concrete business there was a potential to make good money," but he knew there was a "paper trial" and "money trail" and "[he] didn't want to be looking over [his] shoulder anymore because [he] had been looking over [his] shoulder for a few years, because [he] hadn't paid taxes." (Id. at 41-42.) Defendant's testimony, therefore, acknowledges that his failure to file stemmed from his fear that such filings might call attention to his lack of filing tax returns in certain previous years, and not because he failed to realize that his earnings required income tax filings.

12

Further, a review of Defendant's signed Tax Assessments reveals a "Corrected Taxable Income" of $80,225.00 in 1997, $312,602 in 1998, $211,899.00 in 1999, and $425,257.00 in 2000, and, in turn, a "Corrected Tax Liability" of $18,167.00 in 1997, $99,622.00 in 1998, $61,898.00 in 1999, and $143,375.00 in 2000. (Docket Entry 35-2.) Given the amount of taxable income Defendant earned during the years in question, even without his above-referenced sworn testimony, Defendant could not credibly contend that he failed to recognize his need to file income tax returns. Moreover, this evidence reveals that Defendant's income and tax liabilities increased during the years that he did not file income tax returns, further establishing that Defendant fraudulently failed to file income tax returns. See DeVries, 2011 WL 3418248, at *7 ("Consistent failure to report substantial amounts of income over a number of years is, standing alone, highly persuasive evidence of fraudulent intent." (citing Temple v. Commissioner of Internal Revenue, 80 T.C.M. (CCH) 611, 2000 WL 1635406, at *9 (2000), aff'd, 62 F. App'x 605 (6th Cir. 2003)); see also Worsham, 531 F. App'x at 311-12 (affirming finding that the defendant fraudulently failed to file where, among other things, his tax liabilities increased during the years he did not file returns).

In sum, the record, including Defendant's sworn admission that he knew he needed to file income tax returns each year in question,

13

establishes as a matter of law that his failure to file income tax returns for 1998, 1999, and 2000 was fraudulent.

## ii. Penalties for Failure to Pay Income Taxes

Turning to the penalties assessed under section 6651(a)(2) for Defendant's failure to timely pay his income taxes, to avoid these penalties, Defendant must show that his failure to timely pay was "due to reasonable cause and not due to willful neglect." 26 U.S.C. 6651(a)(2); see also United States v. Boyle, 469 U.S. 241, 245 (1985) (recognizing that "the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause'").[7] "Reasonable cause for the failure to pay a tax exists to the extent that taxpayer can satisfactorily show that he exercised ordinary business care and prudence in providing for the payment of his liability, but was, nevertheless, either unable to pay the tax or would have suffered undue hardship if he paid on the due date." United States v. Ballantine, 532 F. Supp. 213, 216 (D. Md. 1981); see also Dogwood Forest Rest Home, Inc. v. United States, 181 F. Supp. 2d 554, 560 (M.D.N.C. 2001) (declining to find

---

[7] "Although *Boyle* only involved reasonable cause under 26 U.S.C. § 6651(a)(1) [(penalties for failure to timely file tax returns)], the term should be analyzed similarly under §§ 6651(a)(2) [(penalties for failure to timely pay the amount shown as tax on any return)] and 6656 [(penalties for failure to make deposit of taxes)] because the term is used identically in those sections." Dogwood Forest Rest Home, Inc. v. United States, 181 F. Supp. 2d 554, 560 n.4 (M.D.N.C. 2001).

reasonable cause where the plaintiff entrusted his agents to make the appropriate tax deposits for his businesses, but they failed to do so). "The issue of what elements are required for reasonable cause is a question of law for the court to decide." Dogwood Forest Rest Home, 181 F. Supp. 2d at 560 (M.D.N.C. 2001) (citing Boyle, 469 U.S. at 249 n.8); see also Donald's Elec. and Refrigeration Serv., Inc. v. United States, No. 5:04CV00039, 2005 WL 552643, at *2 (W.D. Va. Mar. 2, 2005) (unpublished) (finding no reasonable cause would exist for the corporation's failure to timely pay tax liabilities even if the court assumed that the corporate employee responsible for filing and paying taxes was depressed and distracted and that her coworker/husband spent most of his time on the road but had faith in her abilities to manage the corporation's taxes, because the corporation had not alleged any circumstances which would have prevented the corporation from meeting all tax deadlines).

Defendant offers no evidence that would show reasonable cause for his failure to pay income taxes during the years in question. Defendant's brief insists that, "when [he] realized his company was earning enough money to require income tax returns, he wanted to pay his taxes." (Docket Entry 40, ¶ 4.) However, Defendant admitted under oath that he knew that he needed to file tax returns and pay income taxes, but "procrastinated and procrastinated" and did not file or pay his taxes. (Docket Entry 40-1 at 40-41.)

15

Given that Defendant bears a "heavy burden" to prove that his failure to timely pay his taxes arose from "reasonable cause," Boyle 469 U.S. at 245, mere procrastination cannot meet this standard, see Ballantine, 532 F. Supp. at 215-16 (finding the defendant had not shown "the exercise of ordinary business care and prudence in seeing that her tax liabilities were satisfied," despite contention that she had limited formal education, reared five children while overseeing the financial, clerical, accounting, and office administration of two corporations, and hired an accountant to prepare and deliver to her all required corporate tax returns).

Moreover, Defendant does not contend he ever exercised ordinary care and prudence in setting aside money to ensure that he could pay his taxes. (See Docket Entry 40.) That consideration also precludes a finding of reasonable cause. See Carlson v. United States, 126 F.3d 915, 921 (7th Cir. 1997) ("A taxpayer exercises ordinary business care and prudence if he ma[kes] reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due." (internal quotation marks omitted)). In short, the record contains no evidence of reasonable cause for Defendant's failure to pay income taxes.

The IRS also assessed Defendant penalties under section 6654 for his failure to make required estimated tax payments for tax

years 1998, 1999, and 2000. (Docket Entry 35-1, ¶ 7 (citing Docket Entries 35-4, 35-5, 35-6 (Account Transcripts assessing "Penalty for not pre-paying tax")).) Defendant does not contest these penalties (see Docket Entry 40), except to state that "[his] failure to make the tax payments at issue in this litigation were not fraudulent" (id., ¶ 7). Section 6654 does not require proof of fraudulent intent; rather that section states that the "penalty shall be added to the tax," 26 U.S.C. § 6654(a), except where:

(1) the tax amount is small (less than $1,000), 26 U.S.C. § 6654(e)(1);

(2) the individual had no tax liability in the preceding taxable year, 26 U.S.C. § 6654(e)(2);

(3) the "Secretary determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience," 26 U.S.C. § 6654(e)(3)(A); or

(4) a newly retired or disabled individual's underpayment was due to "reasonable cause and not due to willful neglect," 26 U.S.C. § 6654(e)(3)(B).

Defendant does not contend that any of section 6654's exceptions apply in this case. (See Docket Entry 40.) Of particular note, Defendant has made no showing that "unusual circumstances" existed such that assessing penalties for not making required estimated tax payments "would be against equity and good

conscience," 26 U.S.C. § 6654(e)(3)(A).  (See Docket Entry 40.)  In any event, "because [Defendant] could not even meet the reasonable cause standard for waiver of other tax penalties, he [can]not demonstrate unusual circumstances sufficient to avoid the § 6654 addition to tax."  Stoddard v. United States, 664 F. Supp. 2d 774, 783 (E.D. Mich. 2009); see also Carlson, 126 F.3d at 921 (explaining that, "[a]lthough a showing of reasonable cause is not often accepted as an excuse for a § 6654(a) penalty, . . . it would be, at the least, a minimum requirement" (internal quotation marks omitted)).  Under these circumstances, no genuine issue of material fact exists regarding the imposition of section 6654 penalties.

**B. Method of Accounting Used to Prepare Tax Returns**

In opposition to summary judgment, Defendant's brief also asserts that the cash method of accounting would have resulted in lower tax liability.  (Docket Entry 40, ¶ 11.)  The record reflects that Thomas worked as Defendant's bookkeeper during the IRS audit (Docket Entry 35-18 at 7-8, 19), and prepared Defendant's previously unfiled tax returns (id. at 20).  Defendant's brief contends that, "[d]uring [the] audit, the [IRS] Agent insisted that the S-Corporation Income Tax Returns (Form 1120S) be prepared on an accrual basis."  (Docket Entry 40, ¶ 8.)  It also asserts that, "[c]ontrary to the [IRS] Agent's instructions to Defendant's accountant [Thomas], and [] Thomas' instructions to [Defendant], [Defendant] was permitted by law to use the cash method of

18

accounting" (id., ¶ 9), and that, "[u}nder a correct application of the cash method of accounting statutorily guaranteed to small companies like [Defendant's] small construction company, the true tax liability for the years in question is reduced" (id., ¶ 12).

In making the assertion that the IRS "insisted" he use the accrual method of accounting, Defendant's brief cites to his deposition. (See id., ¶ 8 (citing Docket Entry 40-1 at 53-54, 93, 99, 103)). In those portions of his deposition, Defendant states:

(1) "according to [Thomas], [the IRS] rejected our filings on a cash basis and [the IRS] redone [sic] my books and made them on an accrual basis" (Docket Entry 40-1 at 53-54);

(2) that Defendant "ask[ed Thomas] why the IRS would have refused to accept the cash basis" and Thomas told Defendant "that -- now, if you look at all the -- how the revenue began to build up, [Thomas] said that 3 million dollars -- if you had gross revenue of 3 million or above, you had to file on accrual basis, that you could not file on a cash basis" (id. at 93);

(3) that Defendant told Long that Defendant had to "file on an accrual basis" and "[Long] assured [Defendant] that 'no, you don't'" (id. at 99); and

(4) when asked, "[i]f someone from the IRS would tell you something that you think might be wrong, would you check with [Long] or another professional who you think might have more knowledge in tax matters?" (id. at 103), Defendant responded: "Oh,

19

I would today.  Yes, today I would.  I mean, I –- not in the past.
I mean, in the last several years I would, but not –- when I was
having issues like these going on, I mean, you know.  Who's going
to stand up to the IRS?  No, ma'am.  I'm not.  Not then.  Now
today, yes, I would." (Id.)

This testimony does not describe the IRS ever telling
Defendant that he had to use the accrual method of accounting.
Instead, Defendant's cited testimony offers (for its truth) an
account of what Thomas allegedly told Defendant the IRS allegedly
told Thomas.  However, Thomas's alleged statement to Defendant
constitutes hearsay that does not fall under an exclusion or
exception to the Rule against hearsay.  See Fed. R. Evid. 801-807.
In other words, assuming, arguendo, that the IRS's alleged
statement to Thomas does not constitute hearsay, see Fed. R. Evid.
801(d)(2)(A), Defendant does not relate circumstances showing that
he possessed personal knowledge of what the IRS allegedly told
Thomas. (See Docket Entry 40, ¶ 9.)  Moreover, Thomas's deposition
testimony on this point establishes that Thomas does not recall
that "the IRS suggested any changes to the method of accounting
used by [Defendant's business]" or "the method of accounting ever
being discussed." (Docket Entry 35-18 at 21-22.)  Under these
circumstances, Defendant's report of Thomas's alleged statement to
Defendant regarding the IRS's alleged insistence that Defendant use
the accrual method of accounting for his business, is not

20

admissible, and thus, cannot raise a genuine issue of material fact that would preclude the entry of summary judgment in Plaintiff's favor.  See Gell, 252 F.R.D. at 301-02 (declining to consider hearsay statements in connection with summary judgment motion); see also id. at 299-300 ("Evidence considered by the court must be admissible, and 'airy generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment.'" (quoting United States v. Roane, 378 F.3d 382, 400-01 (4th Cir. 2004)).

## C.  Termination of the Installment Plan

As a final matter, Defendant's brief states that he entered into an installment agreement with the IRS to pay his tax liabilities, and that he made installment payments through July 20, 2009, but could not thereafter continue making payments because of the nation's economic downturn.  (Docket Entry 40, ¶¶ 13-15.)  This contention does not raise a genuine issue of material fact that bars summary judgment.  Notably, Defendant admits that he ceased making payments under the installment agreement (see Docket Entry 40-1 at 96); in turn, the IRS terminated the installment agreement (see Docket Entry 35-1 at 9).

It "is not the Court's function to divine the focus of an argument that is not clearly presented, and to then speculatively refute it."  In re Radcliffe, 372 B.R. 401, 413 n.8 (Bankr. N.D. Ind. 2007) (declining to address argument supported only by

21

"nebulous principles" and lacking legal authority applying those principles to material issues).  Here, Defendant's brief does not show how the termination date of the installment agreement, or the rationale for its termination, affects his outstanding tax liabilities, and he cites no law in support of any such proposition(s).  (See Docket Entry 40.)  Accordingly, the Court need not address this matter further.  See Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n. 4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); Nickelson v. Astrue, No. 1:07CV783, 2009 WL 2243626, at *2 n.1 (M.D.N.C. July 27, 2009) (unpublished) ("[A]s [the plaintiff] failed to develop these arguments in his [b]rief, the court will not address them.").  Simply put, Defendant's undeveloped argument regarding the installment agreement does not create a genuine dispute of material fact precluding summary judgment in Plaintiff's favor.[8]

---

[8] Defendant's Answer raised a statute of limitations defense (Docket Entry 10 at 4), and Plaintiff addressed that defense in its Memorandum of Law in Support of its Motion, by explaining that the statute limitations did not expire before Plaintiff filed this lawsuit (Docket Entry 36 at 9-10).  Defendant makes no mention of the statute of limitations defense in his Response to Plaintiff's Motion (See Docket Entry 40).  Defendant's failure to address this argument constitutes a concession under the Court's Local Rules.  See Kinetic Concepts, Inc. v. ConvaTec Inc., No. 1:08CV918, 2010 WL

## CONCLUSION

Plaintiff has established an absence of genuine disputes of material fact and an entitlement to judgment as a matter of law. As a consequence of Defendant's tax liabilities, the Court will order the sale of the Gold Hill Road Properties. <u>See</u> 26 U.S.C. §§ 6321 (declaring that, if a party fails to pay any tax, or any amount attributable thereto, then the United States shall have a lien on all of the party's real and personal property), 7403 (authorizing the United States to enforce any tax lien through sale of an encumbered property).

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Docket Entry 35) is **GRANTED.**

**IT IS FURTHER ORDERED** that a judgment shall be entered in favor of Plaintiff and against Defendant for federal income taxes, penalties, and interest for tax years 1998, 1999, 2000, and 2002 in the amount of $1,222,886.61 as of September 14, 2015, plus interest pursuant to 28 U.S.C. § 1961(c) and 26 U.S.C. § 6621(a)(2), after that date until paid in full.

**IT IS FURTHER ORDERED** that, pursuant to 26 U.S.C. § 6321, Plaintiff has valid and subsisting federal tax liens against the Gold Hill Road Properties.

---

1667285, at *6-8 (M.D.N.C. Apr. 23, 2010) (unpublished) (analyzing this Court's Local Rules 7.3(f), 7.2(a), and 7.3(k) and discussing authority supporting proposition that failure to respond to argument amounts to concession).

**IT IS FURTHER ORDERED** that Plaintiff may foreclose on the Gold Hill Road Properties, and may sell them in accordance with the Order of Sale entered contemporaneously herewith.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December  31 , 2015